THE WOLF LAW GROUP, P.C.
114 Old Country Road, Ste. 116
Mineola, NY 11501
(516)877-9653

RAYMOND NARDO, Esq.
129 Third Street
Mineola, NY 11501
(516)248-2121

COUNSEL FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
## for the
## SOUTHERN DISTRICT OF NEW YORK

JANE KOLB and ROBERT KOLB

Plaintiffs,

**12 CV 8813 (VB)**

-against-

RELIABLE COMMUNITY CARE, Inc., and
NINA POLINSKY

Defendants.

---

### BRIEF ON BEHALF OF DEFENDANTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated:  August 18, 2014

# TABLE OF CONTENTS

TABLE OF CASES .................................................................................................................................... i

PRELIMINARY STATEMENT ................................................................................................... ................1

ARGUMENT ...........................................................................................................................................2

POINT I

SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERE ARE NO GENUINE ISSUES
OF MATERIAL FACT TO BE TRIED ...................................................................................... 2

POINT II

PLAINTIFFS' BENEFIT CLAIM AGAINST RELIABLE SHOULD BE DISMISSED BASED ON THE
STATUTE OF LIMITATIONS ................................................................................................ 3

POINT III

PLAINTIFFS' BENEFIT CLAIM AGAINST RELIABLE   MUST  FAIL  FOR
FAILURE TO SERVE AND/OR JOIN NECESSARY PARTIES

.......................................................................................................................................... 5

POINT IV

PLAINTIFFS' BENEFIT CLAIM AGAINST RELIABLE MUST FAIL BECAUSE
THE PLAN WAS LAWFULLY AMENDED BY RELIABLE IN ACCORDANCE
WITH THE PROVISIONS OF THE PLAN DOCUMENT TO EXCLUDE HIGHLY
COMPENSATED PARTICIPANTS   FROM ELIGILITY FOR MATCHING
CONTRIBUTIONS

.......................................................................................................................................... 7

POINT V

PLAINTIFFS' FIDUCIARY BREACH CLAIM AGAINST NINA POLINSKY MUST BE DISMISSED
SINCE NINA POLINSKY WAS NOT THE PLAN ADMINISTRATOR AND FULFILLED HER
FIDUCIARY DUTIES AS PLAN TRUSTEE ............................................................................. 12

POINT VI

PLAINTIFFS' FIDUCIARY BREACH CLAIM AGAINST NINA POLINSKY
MUST BE DISMISSED BECAUSE IT IS MERELY A DISGUISED CLAIM FOR
BENEFITS ON BEHALF OF THE PLAINTIFFS

.......................................................................................................................................... 15

POINT VII

DEFENDANTS ARE ENTITLED TO CONTRIBUTION FROM PLAINTIFFS WHO WERE
UNJUSTLY ENRICHED BY RECEIVING A BENEFIT FROM THE FAILURE TO CONTRIBUTE
BETWEEN 2004 AND 2010 ............................................................................................... 18

CONCLUSION .....................................................................................................................................19

## TABLE OF CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………..………..2

*Bell v. Pfizer, Inc.*, 626 F.3d 66 (2d Cir. 2010)……………..………………………………15

*Borowski v. International Business Machines Corp,* 165 F.3d 13, 1998 WL 777457 (2d Cir. 1998)…………………………………………………………………….………………15-16

*Bowles v. Seminole Rock & Sand Co..* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)…….10

*Brennan v. Metlife,* 275 F.Supp.2d 405 (S.D.N.Y. 2003)………………………………………...4

*Carey v. International Bhd. of Elec. Workers Local 363 Pension Plan,* 201 F.3d 44 (2d Cir.1999)……………………………………………………………………………………..4

*Cigna Corp. v. Amara,* 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011)……………...…………....…15

*Durso v. 130-10 Food Corp.,* 2009 WL 3084268 (E.D.N.Y. 2009)…………………….……….4

*Esden v. Bank of Boston,* 229 F.3d 154 (2d. Cir. 2000)……...………………………………10

*Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.,* 1996 WL 497085 (E.D.N.Y. 1996) ……………………………………………………………………..5

*Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir. 1985)…………………..………….......5

*Hart v. Equitable Life Assurance Society,* 75 Fed. Appx. 51, 2003 WL 22148771 (2d Cir. 2003) ……………………………………………………………...….13

*I.N.S. v. National Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991)…………………...…………………………………...……………………….…...10

*Izzarelli v. Rexene Products Co.* 24 F.3d 1506 (5th Cir. 1994)……………………………...9

*Lee v. Burkhart,* 991 F.2d 1004  (2d Cir.1993)……………………………………………...5

*Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011)……………...17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574  (1986)……………..…..2

*Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan,* 698 F.2d 593 (2d Cir. 1983)……………………………………………..……………3-4

*Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337 (1916)……………………………………17

*New York State Teamsters Conference Pension & Retirement Fund v. Syracuse Movers, Inc.*, 2004 WL 2931663 (N.D.N.Y. 2004)……………………………………………………..……………...4

*Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 421 (1972)…………………………..……..17

*Pepicelli v. Fall River Shirt Co., Inc.,* Civil Action No. 07-11770-RWZ, *2010 U.S. Dist. LEXIS 99691, 2010 WL 3749453* (D. Mass., Sept. 21 2010)…………………………………………....13

*Rahm v. Halpin,* 566 F.3d 286 (2d Cir. 2009) ……………………………………………..9, 13

*Saxton v. Central Pennsylvania*, Civ. A. No. 02-986, 2003 U.S. Dist. LEXIS 23983, 2003 WL 22952101 (E.D. Pa. Dec. 9, 2003)………………………………………………………………10

*Schulman v. Nass*, 2013 WL 4860119 (S.D.N.Y. 2013)…………………………………………4

*Shannon v. New York City Transit Authority,* 332 F.3d 95 (2d Cir. 2003) ………………..……..2

*Simonds v Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359 (1978)…………………..……...………17

*Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)…………….......10

*Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)………………15

*Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572 (2d Cir. 2006)………..…15

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of Defendants motion for summary judgment. The facts are set forth in Defendants' Rule 56.1 Statement.

As set forth herein, plaintiffs complaint should be dismissed, pursuant to Rule 56, based on the statute of limitations because plaintiffs knew, or should have known, that matching contributions were not being made in 2004. The complaint should also be dismissed because plaintiffs failed to join indispensable parties, including the Plan, and to failed to serve the United States Department of Labor and Treasury Department. Plaintiffs' complaint should also be dismissed because the Plan Amendment was authorized and approved by the Plan, IRS, and DoL, and did not violate the anti-cutback rule. All claims against Nina Polinsky should be dismissed because they are duplicative of the benefit claim, and she did not violate her duties as Trustee. Finally, the defendants should be awarded damages for contribution/unjust enrichment based on the amount of the retroactive contributions to be made to the non-highly compensated employees from 2004 through 2010, when plaintiff Jane Kolb was one half owner of Reliable. In the event that defendants are found liable to make retroactive contributions to highly compensated employees, plaintiff Jane Kolb should pay one half of that liability.

1

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD BE GRANTED
BECAUSE THERE ARE NO GENUINE ISSUES OF
MATERIAL FACT TO BE TRIED**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "where there is no genuine issue as to any material fact" and a party is "entitled to judgment as a matter of law." The "nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial." *Shannon v. New York City Transit Authority,* 332 F.3d 95, 99 (2d Cir. 2003). The party opposing summary judgment "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In the present matter, there are no genuine disputes over material facts and, as a matter of law, plaintiffs' claims must be dismissed, and defendants' counterclaim for unjust enrichment/contribution must be granted.

2

## POINT II

## PLAINTIFFS' BENEFIT CLAIM AGAINST
## RELIABLE SHOULD BE DISMISSED BASED ON
## THE STATUTE OF LIMITATIONS

Plaintiff Jane Kolb and Defendant Nina Polinsky each owned half of Reliable from 2004 to 2010 (Defendants' Rule 56.1 Statement ¶ 1-3, 25). Robert Kolb processed the payroll information into the system, communicated with Paychex, and paid the invoices of Paychex (Defendants' Rule 56.1 Statement ¶ 8). In fact, Paychex correspondence listed Robert Kolb as the contact person for Reliable and Robert Kolb received the payroll report from Paychex and made sure that the bank accounts had sufficient funds to meet payroll expenses (Defendants' Rule 56.1 Statement ¶ 9, 12). Robert Kolb was highly sophisticated based on his involvement in Reliable and his prior business acumen, which included the operation and ownership of a jewelry business for 19 years (Defendants' Rule 56.1 Statement ¶ 10). Consequently, both Plaintiffs were highly sophisticated employees who owned and/or operated a community nursing service, and both were sophisticated enough to understand the mechanics of a 401(k) Plan. Further, both Plaintiffs received weekly paystubs and W-2's (Defendants' Rule 56.1 Statement ¶ 13). Robert Kolb testified that, if he did the math from the paystubs he received, he could have figured out that the employer matching contributions were not made by Reliable (Defendants' Rule 56.1 Statement ¶ 24). Further, each participant had electronic access to a website to obtain data concerning account balances (Defendants' Rule 56.1 Statement ¶ 7). Therefore, both parties were aware, or should have been aware, that Reliable contributed a safe harbor matching contribution of only 1%, instead of 4%, from 2004 through 2010. As a result, Plaintiffs' claims are barred by the six year statute of limitations.

ERISA benefit claims are subject to a six year statute of limitations. *Miles v. New York*

3

*State Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan*, 698 F.2d

593 (2d Cir. 1983). A plaintiff's ERISA cause of action accrues "upon a clear repudiation by the

plan that is known, or should be known, to the plaintiff — regardless of whether the plaintiff has

filed a formal application for benefits." *Carey v. International Bhd. of Elec. Workers Local 363

Pension Plan,* 201 F.3d 44, 49 (2d Cir.1999). In *Brennan v. Metlife*, 275 F.Supp.2d 405 (S.D.N.Y.

2003), the court held that the statute of limitations accrues for independent contractor/employee

claims on the date that the workers knew they were working as independent contractors – which

was the date that they signed independent contractor agreements. *See, also, Schulman v. Nass,*

2013 WL 4860119 (S.D.N.Y. 2013) (because Schulman knew of his alleged misclassification as

an independent contractor from October 2003 to April 2004 and did not file his Complaint until

December 2010 – more than six years later - his Section 512(a)(1)(B) claim is time-barred).

Similarly, Plaintiffs knew, or should have known, (as Robert Kolb testified) that the Plan

was not contributing the full safe harbor matching contribution since 2004. Under federal law,

such a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis

of the action." *New York State Teamsters Conference Pension & Retirement Fund v. Syracuse

Movers, Inc.*, 2004 WL 2931663 (N.D.N.Y. 2004)**.** Thus, in *Durso v. 130-10 Food Corp.,* 2009

WL 3084268 at * 5 (E.D.N.Y. 2009), the court held that "the underlying injury in plaintiffs' claim

is Trade Fair's underpayment of Fund contributions. Accordingly, the injury could not have

occurred, let alone accrued, until the monthly contribution due dates passed without payment." In

the present case, since Plaintiffs knew, or should have known, that the due dates for the matching

contributions passed without payment commencing in 2004, their claims are time-barred.

### POINT III

### PLAINTIFFS' BENEFIT CLAIM AGAINST
### RELIABLE  MUST FAIL FOR FAILURE TO SERVE
### AND/OR JOIN NECESSARY PARTIES

Plaintiffs failed to join a necessary parties, including the Plan.  Consequently, this Court has no jurisdiction to accord any relief.  The Court cannot compel The Plan - a non-party - to receive contributions.  Plaintiffs' claims must be dismissed for failure to join a necessary party under FRCP 19(A)(1)(a) because the "court cannot accord complete relief among existing parties." In *Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.*, 1996 WL 497085 (E.D.N.Y. 1996), the court noted that "[a] party is indispensable when its absence precludes complete relief among the parties. Because a suit for benefits under ERISA must be brought against the plan, it is an indispensable party.  *See Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324 (9th Cir. 1985)."  At all times, joinder was feasible, especially since this defense was raised in defendants' answer, but Plaintiffs failed to name and serve The Plan, which would ultimately be impacted by any decision granting relief to plaintiff. Thus, Plaintiffs' benefit claim must be dismissed for failure to join an indispensable party.

Further, plaintiffs benefit claim requires service upon the United States Department of Labor and the Treasury so that they may intervene.  Specifically, 29 U.S.C. Section 1132(h) requires that:

> A copy of the complaint in any action under this subchapter by a participant, beneficiary, or fiduciary (other than an action brought by one or more participants or beneficiaries under subsection (a)(1)(B) of this section which is solely for the purpose of recovering benefits due such participants under the terms of the plan) shall be served upon the Secretary and the Secretary of the Treasury by certified mail. Either Secretary shall have the right in his discretion to intervene in any action . . .

5

Plaintiff have failed to serve the complaint upon either the Secretary of Labor or the Secretary of Treasury, depriving them of the right to intervene, so the complaint must be dismissed for failure to serve and join necessary parties.

## POINT IV

### PLAINTIFFS' BENEFIT CLAIM AGAINST RELIABLE MUST FAIL BECAUSE THE PLAN WAS LAWFULLY AMENDED BY RELIABLE IN ACCORDANCE WITH THE PROVISIONS OF THE PLAN DOCUMENT TO EXCLUDE HIGHLY COMPENSATED PARTICIPANTS FROM ELIGILITY FOR MATCHING CONTRIBUTIONS

Reliable was the Plan Administrator.  In its capacity as Plan Administrator, and Settlor of the Plan, Reliable could amend its own Plan, pursuant to the terms of the Plan - specifically, Section 7.07(B)(Defendants' Rule 56.1 Statement ¶ 23).  Amendments to the Plan are permitted, in the discretion of Reliable, so long as the amendments do not violate the qualification rules under Section 401(a) and 401(k) of the Internal Revenue Code.  In April of 2012, Reliable amended Part C(1)(b) of the Plan's adoption agreement to exclude highly compensated participants from eligibility for matching contributions (the "Amendment") (Defendants' Rule 56.1 Statement ¶ 28).

Section 401(k)(12)(B) of the Code, which sets forth the rules for safe harbor matching contributions under 401(k) plans, specifically requires a plan sponsor to make matching contributions solely on behalf of non-highly compensated employees in order to satisfy the matching safe harbor rules. Making safe harbor contributions on behalf of highly compensated owners is purely optional with the Plan Sponsor.  When the Plan was initially amended in 2004, the adoption agreement (Part C 1(b)) included highly compensated employees as eligible for matching safe harbor contributions.  That provision was never complied with, as a result of the negligence of the Plan's Third Party Administrator and auditing firm (Defendants' Rule 56.1 Statement, ¶ 15).  Regardless, the owners of the Company took advantage of the safe harbor rules which enabled them to make the maximum tax-favored 401(k) individual contributions to the Plan for themselves, even if these contributions were not matched by Reliable.   Thus, all the highly

7

compensated Plan participants benefited from 2004-2010 by under contributing to the Plan for the rank and file, while taking advantage of the tax advantaged safe harbor rules to save qualified money for their own retirements.

In 2011, Defendant Nina Polinsky, voluntarily applied to the Internal Revenue Service ("IRS") pursuant to the IRS' Voluntary Correction Program under Revenue Procedure 2008-50 to correct the Plan in order to make the rank and file whole and to maintain the tax qualification of the Plan (Defendants' Rule 56.1 Statement ¶ 23). Since (1) the highly compensated employees in the Plan had already benefited from the safe harbor provision by maximizing their tax-favored contributions, and both the Code and the Plan document permitted highly compensated participants to be excluded from the matching safe harbor contributions, and (2) contributing retroactively on behalf of the four highly compensated participants would have caused extreme financial hardship, Reliable requested permission from the IRS to amend Section 3 Part C1(b) of the Adoption Agreement to exclude highly compensated employees from eligibility for the matching safe harbor effective January 1, 2004.

In effectuating the Amendment, Section 7.06 of the Plan did not require Reliable to obtain the consent of nor give notice to the Plaintiffs, who no longer owned Reliable (Defendants' Rule 56.1 Statement ¶ 23). Although Section 204(h) of ERISA and Section 4980(f) of the code provide that, upon making a plan amendment which has the effect of decreasing the future benefit of a participant the plan, the sponsor must give prior notice to the affected participants, this notice requirement only applies if the Plan is a defined benefit plan or an individual account plan subject to the funding rules of ERISA. The Plan is not a defined benefit plan and, pursuant to 29 USC §1081(a)(8), is not subject to the funding rules of ERISA. Therefore, Reliable was not required to give advance notice had to participants for the Amendment to be effective.

8

Plaintiffs only argue that the Amendment violated the anti-cutback rule of ERISA. According to the anti-cutback rule, "an accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). In a defined contribution plan, where each plan participant has an individual account, the term "accrued benefit" means "in the case of a plan which is an individual account plan, the balance of the individual's account." 29 U.S.C. § 1002(23)(B). Section 7.02B of the Plan (Ex. H to Nardo Declaration), which provides the method of determining the fair market value of the remainder of each Individual Account, does not include unpaid employer contributions in its calculation. Furthermore, the Department of Labor, which has jurisdiction over fiduciary issues arising under ERISA plans, has taken the position, that "employer contributions become an asset of the plan only when the contribution has been made." Employee Benefits Sec. Admin., U.S. Dep't. of Labor, Field Assistance Bulletin 2008, at 1-2 (Feb 1, 2008). Thus, in *Rahm v. Halpin*, 566 F.3d 286 (2d Cir. 2009), the Second Circuit held that unpaid contributions to a qualified plan are not to be considered plan assets unless and until they are paid into the plan. If unpaid matching contributions are not considered plan assets, then, they could never be allocated to the individual account of the Plaintiffs, and therefore cannot be considered an "accrued benefit" under ERISA.

While there are no cases dealing directly with the reduction of an accrued benefit in the context of a defined contribution plan in the Second Circuit, the Fifth Circuit Court of Appeals provides guidance in *Izzarelli v. Rexene Products Co.* 24 F.3d 1506 (5th Cir. 1994). In *Izzarelli* the employer initially contributed 101,794 shares of stock to the plan, but then amended the plan and ultimately allocated a much smaller amount to the individual accounts of the plan participants. The Fifth Circuit found that the amendment was not a reduction in an accrued benefit since the stock had not been allocated to the individual participants' accounts and, therefore, was not a

9

deduction of benefits from their account balances. Similarly, in the *Saxton v. Central Pennsylvania*, Civ. A. No. 02-986, 2003 U.S. Dist. LEXIS 23983, 2003 WL 22952101, at *24 (E.D. Pa. Dec. 9, 2003), the plaintiffs alleged that the defendants reduced their accrued benefits under the RIP 87 Plan, a defined contribution plan. Despite defendants' decision to reduce the employer contributions to this plan, the Court held that since the employer contributions were not made directly to this plan, nor allocated to the plan participants' accounts, this could not be considered a reduction of "accrued benefits." Like *Izzarelli* and *Saxton*, the Amendment in the present case cannot be considered a reduction of accrued benefits since, at the time the Amendment was made, Plaintiffs' putative benefit was not contributed to the Plan, nor allocated to individual accounts, and therefore not an "accrued benefit." Since the Amendment did not reduce an accrued benefit, it did not violate the anti-cutback rule.

Further, the IRS, in its capacity to monitor, regulate, and enforce ERISA Plans, explicitly approved the Amendment. The IRS is explicitly authorized, as an administrative agency, to review the facts, determine if hardship has been proven, and approve a suitable remedy. This court should defer to the expertise and factfinding of the IRS.

According to the Second Circuit in *Esden v. Bank of Boston,* 229 F.3d 154, 168 (2d. Cir. 2000):

> It is well-settled that 'an agency's reasonable, consistently held interpretation of its own regulation is entitled to deference.' *I.N.S. v. National Ctr. for Immigrants' Rights, Inc.,* 502 U.S. 183, 189–90, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991). '[P]rovided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'' *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)).

In *Esden,* the Second Circuit reversed the District Court decision because "the district court

enforced the terms of the Plan rather than the requirements of the regulations." *Id.* In the current matter, the IRS approved the Amendment that was adopted by the Plan, which did not violate the anti-cutback rule, and allowed Reliable to maintain its qualified status without causing extreme financial hardship to Reliable.

Further, the DOL subsequently audited the Plan. The DOL relied upon the Amendment approved by the IRS, and did not require the Plan to contribute retroactively for the highly compensated employees (Defendants' Rule 56.1 Statement, ¶ 35). Consequently, two administrative agencies have exercised their discretion and authorized, and approved, the Plan Amendment. Plaintiffs are not entitled to a reversal merely because they dislike the result, which disadvantages both the Plaintiffs and Defendants. Furthermore, Plaintiffs never challenged these Agency's determinations.

## POINT V

**PLAINTIFFS' FIDUCIARY BREACH CLAIM
AGAINST NINA POLINSKY MUST BE DISMISSED
SINCE NINA POLINSKY WAS NOT THE PLAN
ADMINISTRATOR AND FULFILLED HER
FIDUCIARY DUTIES AS PLAN TRUSTEE**

Plaintiffs claim a breach of fiduciary duties against Nina Polinsky under §502(a)(3) of
ERISA in her role as Plan Administrator, stating that "as Plan Administrator she failed over a six
year period from 2004 to 2010 to supervise the 401(k) and to make sure the employer contributions
were being made by Reliable in conformity with the terms of the 401(k) then in effect" (Ex. X to
Nardo Declaration). This claim must be dismissed since the Plan Administrator was, and is,
Reliable - not Nina Polinsky. The complaint makes no claim against Nina Polinsky in her capacity
as Plan Trustee. It must be dismissed because it is not the Plan Trustee's obligation to contribute
to the Plan; it is Reliable's obligation. Although a Trustee has a duty to demand that the Plan
Sponsor (Reliable) make the required contribution to the Plan, Nina Polinsky did not become
aware of the fact that the full safe-harbor matching contributions were being made until 2010, as
she relied on Paychex, which negligently failed to make matching contributions, and Sam
Weitschner, who audited the Plan's tax reporting Form 5500's, but failed to notice that the full
safe-harbor matching contributions were not being made (Defendants' Rule 56.1 Statement ¶ 18).

ERISA regulations also provide that a fiduciary is not liable for relying on errant data. "A
plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing
ministerial functions for the plan, provided that he has exercised prudence in the selection of such
persons. The plan fiduciary will be deemed to have acted prudently in such selection and retention
if, in the exercise of ordinary care in such situation, he has no reason to doubt the competence,
integrity or responsibility of such persons." 29 C.F.R. § 2509.75-8, FR-11. Nina Polinsky relied

on Paychex, a well respected third party administrator, to perform the ministerial task of matching contributions. Both Plaintiffs and Defendants entrusted the audit functions to Sam Weitschner, an accountant who also failed to notice the additional contributions were not being made. Nina Polinsky's reliance on these parties, therefore, does not constitute a fiduciary breach. *Hart v. Equitable Life Assurance Society*, 75 Fed. Appx. 51, 2003 WL 22148771 (2d Cir. 2003)(holding that mailing incorrect benefit projections is not a breach of fiduciary duty). Consequently, Plaintiffs' breach of fiduciary duty claim must fail, as a matter of law.

Furthermore, under ERISA "a person is a fiduciary with respect to a plan to the extent . . . he exercises any authority or control respecting management or disposition of its [plan] assets." 29 U.S.C. §1002(21)(A)(1). Therefore, to establish that Nina Polinsky breached her fiduciary duties, Plaintiffs must demonstrate that the unpaid contributions to the Plan constituted Plan assets, and that Nina Polinsky had the requisite control over those assets to make her a fiduciary in connection therewith. As previously discussed, in *Rahm v. Halpin,* 566 F.3d 286 (2d Cir. 2009), the Second Circuit held that unpaid contributions to a qualified plan are not to be considered plan assets unless and until they are paid into the plan. *See also*, Employee Benefits Sec. Admin., U.S. Dep't. of Labor, Field Assistance Bulletin 2008, at 1-2 (Feb 1, 2008) ("employer contributions become an asset of the plan only when the contribution has been made"), and *Pepicelli v. Fall River Shirt Co., Inc.,* Civil Action No. 07-11770-RWZ, *2010 U.S. Dist. LEXIS 99691, 2010 WL 3749453* (D. Mass., Sept. 21 2010) (CEO and CFO of Company were not personally liable, as fiduciaries, for unpaid employer contributions since "employer contributions are not plan assets and the relationship between the employer and the plan in respect to employer contributions is that of a debtor and creditor,  not a fiduciary"). Based upon these holdings and the DOL's position, Nina Polinsky could not have breached her fiduciary duties in connection with the unpaid

13

contributions, since those contributions were not Plan assets over which she had any control.

The Court should also take note of the fact that Defendant, Nina Polinsky, in her capacity as Trustee of the Plan, sought to fulfill her responsibilities to have Reliable contribute to the Plan. Even after the IRS issued a letter to Reliable in 2010 indicating that it would take no further action against the Plan, Nina Polinsky, voluntarily brought the matter of unpaid contributions to the attention of the Internal Revenue Service in an attempt to make the non-highly compensated participants whole, and to protect the qualification of the Plan (Defendants' Rule 56.1 Statement ¶ 22-23). Defendant, Nina Polinsky, fulfilled her fiduciary responsibility to insure that unpaid contributions would be paid.

14

## POINT VI

### PLAINTIFFS' FIDUCIARY BREACH CLAIM
### AGAINST NINA POLINSKY MUST BE DISMISSED
### BECAUSE IT IS MERELY A DISGUISED CLAIM
### FOR BENEFITS ON BEHALF OF THE PLAINTIFFS

Plaintiffs claim against Nina Polinsky for breaching her fiduciary duties constitutes a claim under 29 USC §1132(a)(3), ERISA 502(c)(3) -- a claim that can be brought by a participant to obtain appropriate equitable relief. The Supreme Court in *Varity Corp. v. Howe*, 516 U.S. 489, 510, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996), explained that 'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title' — are broad enough to cover individual relief for breach of a fiduciary obligation." However, pursuant to *Bell v. Pfizer, Inc.*, 626 F.3d 66, 73 (2d Cir. 2010), an individual participant proceeding under this section may not seek any and all forms of relief; monetary damages, for example, are not available. "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B)." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006). The Supreme Court recently reiterated this restriction in *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878, 179 L. Ed. 2d 843 (2011), stating that "[w]e have interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were typically available in equity." As a result of Nina Polinsky's alleged breach of fiduciary duties, Plaintiffs claim they have been damaged "in an amount to be determined at trial, but believed to be at least $75,000 with interest thereon." Plaintiffs seek monetary damages, not equitable relief under 29 USC §1132 and ERISA §502(c)(3). This is precisely the same relief requested by the Plaintiffs for their benefit claim. Thus, as set forth by the Second Circuit in *Borowski v. International Business Machines Corp*, 165 F.3d 13, 1998 WL 777457 at *2 (2d Cir.

15

1998), "when an ERISA fiduciary claim seeks to recover the same relief requested by a denial-of-benefits claim, the fiduciary duty claim is precluded."

## POINT VII

## DEFENDANTS ARE ENTITLED TO CONTRIBUTION FROM PLAINTIFFS WHO WERE UNJUSTLY ENRICHED BY RECEIVING A BENEFIT FROM THE FAILURE TO CONTRIBUTE BETWEEN 2004 AND 2010

An unjust enrichment claim is rooted in "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337 (1916). In order to adequately plead an unjust enrichment claim, the Defendant must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465 (2011). Furthermore, "unjust enrichment . . . does not require the performance of any wrongful act by the one enriched" (*Simonds v Simonds*, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359). "Innocent parties may frequently be unjustly enriched" (id.). "What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it'" (*Id.* at 242, quoting *Miller v Schloss*, 218 N.Y. 400, 407; see *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 421 (1972).

Plaintiff Jane Kolb was a fifty (50%) percent owner of Reliable along with Defendant Nina Polinsky until 2010 when she sold her 50% to the Defendant. Reliable was responsible for making matching contributions to the Plan from 2004 through 2010. Had those contributions been made in accordance with the Plan terms, the payments would have been paid from Reliable's assets Defendants' Rule 56.1 Statement ¶ 38, 39). As 50% owner of Reliable, Jane Kolb shared one half of the responsibility of making the correct matching contributions to the Plan. However, since she sold her interest to Nina Polinsky in 2010, she never shared in the burden to make corrective

17

contributions to the Plan (Defendants' Rule 56.1 Statement ¶ 42). Jane Kolb was enriched because she received her annual salary and profit distributions based on Reliable's profits, which would have been reduced had the contributions been properly made to the Plan (Defendants' Rule 56.1 Statement ¶ 38-39). Plaintiff Jane Kolb was enriched at Nina Polinsky's expense since Nina Polinksy, as the current and sole owner of Reliable, is responsible for making full correction of the missed matching contributions to the Plan by November 6, 2014 (Defendants' Rule 56.1 Statement ¶ 42). Consequently, it is against equity and good conscience to permit Jane Kolb to benefit by not requiring her to bear the burden of a mistake that occurred while she was a 50% owner of Reliable. Thus, defendants have shown that (1) plaintiffs have been enriched, (2) at defendants' expense, and (3) that it is against equity and good conscience to permit plaintiffs to retain this benefit. Due to this unjust enrichment, Defendant Jane Kolb should be required to contribute one-half (1/2) of the amount Reliable is required to repay to the Plan for the non-highly compensated employees, as a result of the failure to make required safe harbor contributions, which amounts to a gross sum of $114,892.91 (Defendants' Rule 56.1 Statement, ¶ 37), minus the settlement amounts obtained from Paychex and Weitschner (which totals $44,607.89), which amounts to $70,285.02, and the resulting liability to plaintiff Jane Kolb would total $35,142.50. Furthermore, if the Court finds that the retroactive Plan Amendment excluding highly compensated employees from eligibility to receive safe harbor contributions is for any reason impermissible, then Jane Kolb should similarly be responsible to contribute one-half (1/2) of said contribution to the Plan.

18

## CONCLUSION

For the foregoing reasons, defendants request that this Court grant defendants' motion for summary judgment in its entirety and dismiss all claims against defendants, and require plaintiffs to pay defendants one half of the amount of contributions required to be paid to the non-highly compensated employees, and grant such other and further relief as the Court deems just and equitable including, but not limited to, an award of counsel fees.

*Anna L. Ellin* (AE 3547)
THE WOLF LAW GROUP, P.C.
114 Old Country Road, Ste. 116
Mineola, NY 11501
(516)877-9653

(RN 4773)
RAYMOND NARDO, Esq.
129 Third Street
Mineola, NY 11501
(516)248-2121

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on August 18, 2014, I, Raymond Nardo:

served the enclosed:

DEFENDANTS'BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

by filing ECF                              on counsel located at:

Steven Kaplan, Esq.
Rosenfeld & Kaplan
1180 Avenue of the Americas #1920
New York, NY 10036

8/18/14
DATE _____

_____